## DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

―――――――――――――――――――――――――――
)
**SONIA MAYNARD LIBURD** and )
**RAYMOND A. HARLEY, SR.,** )
)
       **Plaintiffs,** )
)
       **v.** )      **Civil Action No. 2011-020**
)
**GOVERNMENT OF THE VIRGIN ISLANDS** )
**and GOVERNOR JOHN P. DE JONGH, JR.,** )
)
       **Defendants.** )
―――――――――――――――――――――――――――)

**Attorneys:**
**Eszart A. Wynter, Sr., Esq.,**
St. Croix, U.S.V.I.
      *For the Plaintiffs*

**Erika Marie Scott, Esq.,**
St. Croix, U.S.V.I.
      *For the Defendants*

## <u>MEMORANDUM OPINION</u>

**Lewis, District Judge**

     THIS MATTER comes before the Court on Defendants' Motion for Judgment on the Pleadings and accompanying Memorandum (Dkt. Nos. 20, 21), Plaintiffs' Opposition thereto (Dkt. No. 26), and Defendants' Reply (Dkt. No. 31). For the reasons discussed below, the Court will grant Defendants' Motion, but will allow Plaintiffs leave to amend the Complaint.

## I.    BACKGROUND

### A.    Procedural History

     On March 15, 2011, Plaintiffs Sonia Maynard Liburd and Raymond A. Harley, Sr. filed a Complaint (Dkt. No. 1) seeking injunctive relief, declaratory relief, compensatory damages,

special damages, costs, and attorney's fees from Governor John P. de Jongh, Jr. (in his official capacity as Governor of the U.S. Virgin Islands) and the Government of the U.S. Virgin Islands (the "Virgin Islands Government" or the "Government") (collectively, "Defendants").

Plaintiffs allege that: (1) Defendants intentionally deprived Plaintiffs of their constitutional rights to free association and public political speech by terminating them from their positions for political reasons and without just cause, in violation of the First Amendment to the U.S. Constitution as applied to the Virgin Islands pursuant to 48 U.S.C. § 1561  (Dkt. No. 1 at ¶¶ 41–42); (2) Defendants failed to grant the Plaintiffs their rights under the Due Process Clause (Dkt. No. 1 at ¶ 43); (3) Defendants failed to grant the Plaintiffs "their rights under the equal protection act"  (Dkt. No. 1 at ¶ 43); (4) Defendants' actions constitute a breach of contract (express and implied), by violating the procedures and policies set forth in the Rules and Regulations of the Virgin Islands Government Personnel Department  (Dkt. No. 1 at ¶ 46); (5) Defendants intentionally inflicted emotional distress upon Plaintiffs.  (Dkt. No. 1 at ¶ 50–51); and (6) Defendants negligently inflicted emotional distress upon Plaintiffs.  (Dkt. No. 1 at ¶ 53–54).

On June 7, 2011, Defendants filed an Answer, raising general denials and several affirmative defenses, including a request that the Complaint be dismissed for failure to state a claim.  (Dkt. No. 11).  The Court issued an Order establishing a discovery schedule on July 12, 2011.  (Dkt. No. 13).  Pursuant to that schedule, all factual discovery was to be completed by November 14, 2011, and all dispositive motions were to be filed by May 31, 2012.  (Dkt. No. 13 at 1).  On May 14, 2012, pursuant to Federal Rule of Civil Procedure 12(c), Defendants filed the instant Motion for Judgment on the Pleadings and accompanying Memorandum (Dkt. Nos. 20, 21), arguing principally that the Complaint fails to state a claim upon which relief can be

granted. Plaintiffs filed an opposition on July 19, 2012 (Dkt. No. 26), and Defendants filed a reply on August 10, 2012 (Dkt. No. 31).

## B.    Factual Background

In view of the applicable legal standard, *see infra*, Part II, the following facts, as alleged by Plaintiffs in their Complaint, are accepted as true.[1] Plaintiff Sonia Maynard Liburd ("Liburd") was employed by the Virgin Islands Government as a Planning and Research Manager since June 26, 1993. (Dkt. No. 1 at ¶ 7). In February 2009, Liburd was reassigned to the position of Director of Prison Programs. (*Id.* at ¶ 9). On November 29, 2010, a memorandum was sent by Julius C. Wilson, the Director of the Bureau of Corrections, stating that "all persons holding exempt positions who serve at the pleasure of the Governor are expected to submit the customary letter of resignation[] no later than Thursday, December 2nd, 2010." (*Id.* at ¶ 10). The memorandum further stated that the resignation letter should not state an effective date, which would be set by the Governor if the resignation was accepted. (*Id.* at ¶ 10). Liburd "was instructed by her supervisor, Julius C. Wilson, to execute the resignation letter and was told by her supervisor that it was a procedure that all employees were doing through the manipulation of the Governor and his henchmen." (*Id.* at ¶ 11). Liburd "reluctantly submitted the resignation letter while receiving assurances from her supervisor, Julius C. Wilson, that she ha[d] nothing to worry about." (*Id.* at ¶ 12).

On approximately December 6, 2010, Liburd received a letter from the Governor that her

---

[1] Under the legal standard applicable to Defendants' Motion for Judgment on the Pleadings, the Court is required "to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party." *Rocks v. City of Philadelphia*, 868 F.2d 644, 645 (3d Cir. 1989); *see also Allah v. Al-Hafeez*, 226 F.3d 247, 249–50 (3d Cir. 2000). The Court will not, however, "accept unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations." *Williams v. Allstate Ins. Co.*, 595 F. Supp. 2d 532, 537 (E.D. Pa. 2009) (citing *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir.1997)).

resignation was accepted, and that the effective date of the resignation would be December 17, 2010.  (*Id.* at ¶ 13).   In a subsequent conversation between Liburd and Wilson, Wilson explained that the acceptance of her resignation was political in nature, due to Liburd's alleged political affiliation with or support of the "other camp"—the campaign of Governor de Jongh's opponent in the 2010 gubernatorial election.  (*Id.* at ¶ 16–33).

The facts alleged with respect to Raymond A. Harley, Sr. ("Harley") are that he was employed by the Government as Director of Enforcement, Security and Transportation with the Department of Health, starting on April 14, 2008.  (Compl. at ¶¶ 35–36, Dkt. No. 1).[2]  He had "a good work record" during his employment.  (*Id.* at ¶ 36).  On approximately December 6, 2010, Harley received a letter from the Governor stating that Harley's resignation had been accepted, with an effective date of December 17, 2010.  (*Id.* at ¶ 37).   Harley asserts that he was terminated:  (1) for not being supportive of Governor de Jongh in his reelection campaign; (2) due to an alleged claim of political association with the opposing campaign; and (3) so Defendants could employ persons who supported Governor de Jongh's most recent campaign. (*Id.* at ¶ 38).

## II.   APPLICABLE LEGAL STANDARDS

When considering a Federal Rule of Civil Procedure 12(c) motion for judgment on the pleadings based on the defense that the plaintiff has failed to state a claim, courts analyze the motion under the same legal standards that apply to a motion to dismiss for failure to state a claim under Rule 12(b)(6).  *Revell v. Port Auth. of N.Y. & N.J.*, 598 F.3d 128, 134 (3d Cir. 2010) (citing *Turbe v. Gov't of the V.I.*, 938 F.2d 427, 428 (3d Cir. 1991)); *see also Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004) ("There is no material difference in the applicable legal

---

[2] The allegations pertaining to Plaintiff Harley are extremely sparse, comprising just seven sentences in the Complaint.  (*See* Compl. at ¶¶ 35–39, Dkt. No. 1).

standards.").   Under the Supreme Court decisions in *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), when presented with a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6):

> [D]istrict courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief."

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679); *Acosta v. Hovensa, LLC*, 53 V.I. 762, 770 (D.V.I. 2010).   A complaint must "show" with its alleged facts that the plaintiff is entitled to relief.  *Id.* at 211 (citing *Phillips v. County of Allegheny*, 515 F.3d 224, 234–35 (3d Cir. 2008)).   "A district court may grant the motion to dismiss only if, accepting all factual allegations as true and construing the complaint in the light most favorable to plaintiff, it determines that plaintiff is not entitled to relief under any reasonable reading of the complaint." *Acosta*, 53 V.I. at 771 (citing *Capogrosso v. Supreme Court of N.J.*, 588 F.3d 180, 184 (3d Cir. 2009) (internal quotations and brackets omitted)).

"Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *McTernan v. City of York*, 577 F.3d 521, 531 (3d Cir. 2009) (citing *Iqbal*, 556 U.S. at 679).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.   While the Court must determine whether the facts as pleaded state a plausible claim for relief, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts alleged is improbable and that a recovery is very remote and unlikely."  *Fowler,* 578 F.3d at 213 (quoting *Twombly*, 550 U.S. at 556).

In deciding a motion to dismiss, the Court "may consider documents that are attached to or submitted with the complaint and any matters incorporated by reference or integral to the claim, [and] items subject to judicial notice."  *Acosta*, 53 V.I. at 768 n.1 (internal quotation marks omitted) (quoting *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006)); *see also Del. Nation v. Pennsylvania*, 446 F.3d 410, 413 (3d Cir. 2006) ("Courts may consider matters of public record, exhibits attached to the complaint, and undisputedly authentic documents attached to a motion to dismiss.").

## III.   DISCUSSION

In support of their Motion for Judgment on the Pleadings, Defendants raise various arguments in support of the dismissal of Plaintiff's First Amendment, Due Process, Equal Protection, breach of contract, intentional infliction of emotional distress, and negligent infliction of emotional distress claims.  (Dkt. No. 21 at 4–9).  The Court will first address Plaintiff's argument that Defendants' Motion is untimely, before turning to examine Defendants' substantive arguments regarding Plaintiffs' claims.

## A.    Timeliness of Defendants' Motion for Judgment on the Pleadings

Plaintiffs contend that when an answer has been filed, a subsequent motion to dismiss for failure to state a claim is untimely.  Thus, in Plaintiffs' view, Defendants' Motion for Judgment on the Pleadings is untimely and not properly before the Court.  (Dkt. No. 26 at 4).

A party may move for judgment on the pleadings after the answer has been filed, but not so late as to delay trial.  *See* Fed. R. Civ. P. 12(c) ("After the pleadings are closed—but *early enough not to delay trial*—a party may move for judgment on the pleadings.") (emphasis added). While such motions are typically filed near the inception of the lawsuit and shortly after the pleadings close, *see Thomas v. Henderson*, 297 F. Supp. 2d 1311, 1314 (S.D. Ala. 2003), in this

instance Defendants' Motion was filed on the eve of the dispositive motions deadline—eleven months after their Answer was filed and six months after the deadline for completing factual discovery.

Given the requirement in Rule 12(c) that motions for judgment on the pleadings must be made early enough not to delay trial, the Seventh Circuit has affirmed a magistrate judge's denial of a Rule 12(c) motion as untimely when a party moved for judgment on the pleadings "[m]ore than twenty-six months after the close of pleadings, twenty months after the dispositive motions deadline and two weeks after the final pretrial order." *Riggins v. Walter*, 279 F.3d 422, 427 (7th Cir. 1995). However, courts have also held that "a motion for judgment o[n] the pleadings can be filed at any time before trial . . . ." *See, e.g.*, *S.E.C. v. Wolfson*, 539 F.3d 1249, 1264 (10th Cir. 2008); *see also Sun Microsystems Inc. v. Hynix Semiconductor Inc.*, 534 F. Supp. 2d 1101, 1118 (N.D. Cal. 2007) ("[T]he court may consider the defense of failure to state a claim at any time before trial."). Indeed, the Sixth Circuit has held that a motion for judgment on the pleadings may be made only days before trial and not be considered untimely if there is no prejudice caused by the delay. *See General Elec. Co. v. Sargent & Lundy*, 916 F.2d 1119, 1131 (6th Cir. 1990). Even in a case in which defendants filed motions to dismiss more than three years after filing their answer, the Court has treated those motions as properly filed motions for judgment on the pleadings, and has considered the merits of the motions. *Sanders v. Virgin Islands*, Civil Action No. 05-18, 2009 WL 649888 at *1 n.1 (D.V.I. Mar. 9, 2009); *see also Thomas*, 297 F. Supp. 2d at 1314 (considering a motion for judgment on the pleadings filed "on the eve of the discovery completion date" and two years after a defendant was served with process).

Here, Plaintiffs have not established that Defendants' Motion for Judgment on the

Pleadings was filed so late as to delay trial or result in prejudice to Plaintiffs.  *See* Fed. R. Civ. P. 12(c); *Sargent & Lundy*, 916 F.2d at 1131.  Pursuant to the Scheduling Order issued on July 12, 2011 (Dkt. No. 13), trial in this matter was originally set for August 8, 2012.  (Dkt. No. 13 at 2). Defendants submitted their Motion for Judgment on the Pleadings (Dkt. No. 20) and supporting Memorandum (Dkt. No. 21) on May 14, 2012.  Given that the Motion for Judgment on the Pleadings was filed approximately three months before the then-scheduled trial, and in the absence of other evidence showing delay or prejudice, the Court finds that Plaintiffs have not shown that the Motion was untimely.  *See* Fed. R. Civ. P. 12(c); *see also Sargent & Lundy*, 916 F.2d at 1123, 1131 (holding that a motion for judgment on the pleadings was not untimely, despite being filed only "several days before the trial," when defendant's motion was well-supported and plaintiff had failed "to articulate a basis for any prejudice caused by the delay").[3] Accordingly, under the particular facts and circumstances of this case, the Court will reject Plaintiffs' argument that Defendants' Motion is untimely, and the merits of the Motion will be addressed.

**B.**     **The Constitutional and Civil Rights Claims**

In their Complaint, Plaintiffs make three claims related to their constitutional and civil rights:  (1) violation of their First Amendment constitutional rights to free association and public political speech; (2) violation of "their rights under the due process clause"; and (3) violation of "their rights under the equal protection act."  (Dkt. No. 1 at ¶ 41–43).  The Court will review the parties' arguments regarding the constitutional and civil rights claims generally, before specifically examining each of the three individual claims.

---

[3] In view of the three-month window between the filing of the instant Motion and the then-scheduled trial date, the Court will not, for purposes of this analysis, consider the continuance of the trial to be delay occasioned by an untimely filing.

Plaintiffs contend that their constitutional and civil rights claims are applied to the Virgin Islands pursuant to 48 U.S.C. § 1561, which states that certain provisions of, and amendments to, the U.S. Constitution—including, among others, the First and Fifth Amendments, and the second sentence of section 1 of the Fourteenth Amendment[4]—"are hereby extended to the Virgin Islands to the extent that they have not been previously extended to that territory and shall have the same force and effect there as in the United States or in any State of the United States." 48 U.S.C. § 1561. In their Opposition to Defendants' Motion, Plaintiffs explain that their constitutional and civil rights claims include violations of their free association and public political speech rights under the First Amendment, and their Due Process and Equal Protection rights under the Fourteenth Amendment, giving rise to a cause of action under 42 U.S.C. § 1983. (Dkt. No. 26 at 4–6).

Defendants contend that Plaintiffs cannot bring direct constitutional claims against Defendants, and that *Bivens* claims are allowed only against federal officials and not state or territorial officials. (Dkt. No. 21 at 4). Defendants further argue that the Government of the Virgin Islands and its officials acting in their official capacities are not considered "persons" under § 1983, causing Plaintiffs' claims for money damages under § 1983 to fail as a matter of law. (Dkt. No. 31 at 2). Additionally, to the extent that Plaintiffs seek back pay, Defendants contend that past wages constitute retrospective monetary relief, which is barred. (*Id.* at 2–3).

The Court agrees with Defendants' contention with respect to the definition of "persons" under § 1983. "Neither the Territory of the Virgin Islands nor its officers acting in their official

---

[4] The applicable portion of the Fourteenth Amendment provides: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

capacities are 'persons' under 42 U.S.C. § 1983." *McCauley v. Univ. of the V. I.*, 618 F.3d 232, 240 (3d Cir. 2010) (quoting *Brow v. Farrelly*, 994 F.2d 1027, 1037 (3d Cir. 1993)). Accordingly, they may be sued for prospective injunctive relief only, not monetary damages. *Iles v. de Jongh*, 638 F.3d 169, 177–78 (3d Cir. 2011).  Moreover, because past wages do not constitute prospective injunctive relief, lost wages are likewise unavailable as a form of relief for § 1983 claims against the Government of the Virgin Islands and its officials acting in their official capacities.  *See id.* at 178 ("[T]he District Court's award of back pay, although injunctive in nature, is impermissible retrospective relief").

Plaintiffs have sued the Government of the Virgin Islands as well as Governor de Jongh in his official capacity as Governor.  (Dkt. No. 1 at ¶ 6).  Thus, as a matter of law, Plaintiffs' First Amendment, Due Process, and Equal Protection claims under § 1983 cannot succeed with respect to the past wages, monetary damages, and retrospective relief sought in the Complaint. *See Boyd-Richards v. de Jongh*, Civil Action No. 11–45, 2012 WL 13682 (D.V.I. Jan. 4, 2012) ("The government of the U.S. Virgin Islands and government officials acting in their official capacity are not "persons" within the meaning of § 1983.  Thus, [the plaintiff] cannot bring her First Amendment, due process or equal protection claims under § 1983 against the Virgin Islands or against Governor de Jongh or Dr. Terry in their official capacities.") (citations omitted). Accordingly, Defendants' Motion for Judgment on the Pleadings will be granted as to Plaintiffs' claims under § 1983 to the extent that Plaintiffs seek past wages, retrospective remedies, and monetary damages.

However, Plaintiffs' constitutional claims are potentially applicable to their prayers for "preliminary and permanent injunctive relief against the Defendants herein and their agents, restraining and enjoining them from continuing to have the Plaintiffs off the payroll" and

"declaratory judgment that the Defendants are in violation of the Collective Bargaining Agreement." (Dkt. No. 1 at 9). The Court will therefore examine each constitutional claim in turn with respect to such prospective injunctive relief.

### 1. First Amendment

Plaintiffs' Complaint alleges that Defendants intentionally deprived Plaintiffs of their constitutional rights to free association and public political speech by terminating them from their positions for political reasons and without just cause, in violation of the First Amendment to the U.S. Constitution as applied to the Virgin Islands pursuant to 48 U.S.C. § 1561. (Dkt. No. 1 at ¶¶ 41–42).

The Supreme Court has held that the termination of a government employee because of his or her political affiliation violates the First Amendment's Freedom of Association clause. *Gibbs v. Turnbull*, Civil No. 1999-0061, 2008 WL 2917824 at *3 (D.V.I. July 24, 2008) (citing *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Political beliefs and political association constitute the core of the activities protected by the First Amendment. *Elrod*, 427 U.S. at 356; *see also Buckley v. Valeo*, 424 U.S. 1, 11 (1976). The freedom to associate with others to advance political beliefs and ideas is clearly a form of "orderly group activity" protected by the First Amendment. *Elrod*, 427 U.S. at 357 (citing *NAACP v. Button*, 371 U.S. 415, 430 (1963)). This right includes the freedom to associate with one's preferred political party. *Id.* (citing *Kusper v. Pontikes*, 414 U.S. 51, 57 (1973)).

Therefore, the Supreme Court has held that termination of a public employee due to his or her political affiliation violates the First Amendment, unless the position at issue involves policymaking. *Galli v. New Jersey Meadowlands Comm'n*, 490 F.3d 265, 270 (3d Cir. 2007) (citing *Elrod*, 427 U.S. at 359). The policymaking exception exists because political loyalty is

essential for policymaking positions.  *Id.*

From those general principles, and the Supreme Court's "trilogy of political patronage cases"—*Elrod*, 427 U.S. 347; *Branti v. Finkel*, 445 U.S. 507 (1980); and *Rutan v. Republican Party of Ill.*, 497 U.S. 62 (1990)—the Third Circuit has derived a three-pronged test to establish a claim of discrimination based on political affiliation and patronage in violation of the First Amendment.  *Montone v. City of Jersey City*, Nos. 11–2990 and 11–3516, 2013 WL 856359 at *5 (3d Cir. Mar. 8, 2013).  To succeed on such a claim, a public employee plaintiff must make a prima facie showing that:  (1) the plaintiff was employed at a public agency in a position that does not require a political affiliation; (2) the plaintiff was engaged in conduct protected by the First Amendment—e.g., maintaining a political affiliation; and (3) the constitutionally-protected conduct was a substantial or motivating factor in the adverse employment decision.  *Id.*; *Smith v. City of Allentown*, 589 F.3d 684, 692 (3d. Cir. 2009); *Galli*, 490 F.3d at 271; *McIntosh-Luis v. DeJongh*, Civil Action No. 09–22, 2012 WL 1139746 at *3 (D.V.I. Mar. 30, 2012).  Once the plaintiff establishes a prima facie case, the defendant may avoid a finding of liability by proving, by a preponderance of the evidence, that the same employment action would have been taken even in the absence of the political affiliation.  *McIntosh-Luis*, 2012 WL 1139746 at *3 (citing *Allentown* at 692–93).  The Third Circuit has held that a public employee's claim of political discrimination must be based on more than speculation.  *Gibbs*, 2008 WL 2917824 at *3 (citing *Liotta v. Borough of Springdale*, 985 F.2d 119, 122 (3d Cir. 1993)).

Here, there are no facts alleged in the Complaint that would plausibly show that Plaintiffs' positions did not require a political affiliation or involve policymaking.  *See id.*  Indeed, even accepting all factual allegations as true and construing the Complaint in the light most favorable to Plaintiffs, *see Acosta*, 53 V.I. at 771, several facts in the Complaint suggest the

opposite conclusion.   As alleged in the Complaint, at the time of her termination, Plaintiff Liburd's title was "Director o[f] Prison Programs." (Compl. at ¶¶ 9, Dkt. No. 1).   The memorandum directing the submission of resignation letters—to which Liburd responded—was directed to "all persons holding exempt positions." (Compl. at ¶ 10, Dkt. No. 1).[5]  Further, in a discussion surrounding her termination, Plaintiff Liburd stated that "I have been an exempt employee for seventeen and a half years (17.5)" and that "I have always been involved in program development and execution." (Compl. at ¶¶ 18, 20 Dkt. No. 1). Thus, far from alleging facts which plausibly show that Plaintiff Liburd's position did not require a political affiliation, the facts alleged in the Complaint seem to suggest that Plaintiff Liburd may have held a policymaking position that required a political affiliation.

The only facts alleged concerning the nature of Plaintiff Harley's employment prior to termination are that he "has performed in the capacity as Director of Enforcement, Security and Transportation of the Department of Health" and that he "has had a good work record from the date of his initial employment April 14th 2008 to the present."   (See Compl. at ¶¶ 35–36, Dkt. No. 1).  Even viewing the allegations in the light most favorable to Plaintiff Harley, none of the facts alleged plausibly show that his position did not require a political affiliation or involve policymaking.

---

[5] In order to bring a successful claim for improper termination in violation of the right to freedom of political association under the First Amendment, the requirement that the plaintiff's position must not be a "policymaking" position and must not "require a political affiliation" is similar to the Virgin Islands requirement in the Due Process context that the plaintiff must be a "regular career service employee" and not an "exempt employee," as discussed infra.  See McIntosh-Luis, 2012 WL 1139746 at *2–6 (applying the three-pronged "political affiliation" test as articulated in Allentown, 589 F.3d at 692, to the plaintiff's First Amendment claim, and applying the exempt, "not regular" career service, and "regular" career service categories to the plaintiff's Due Process claims); see also Iles, 638 F.3d at 173 ("[A] a position is exempt and not in the career service category when the Governor designates it as a position of a 'policy-determining nature' and it is submitted to the Legislature.").

The Supreme Court's plausibility standard for pleadings, as described in *Twombly* and *Iqbal*, is not the same as a *probability* requirement.  *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 556.  However, it does require more than the "sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678.  While plaintiffs are not required to *establish* the elements of a *prima facie* case in a complaint, they must make allegations that raise a *reasonable expectation* that discovery will reveal evidence of the necessary element.  *See Fowler*, 578 F.3d at 213; *Phillips*, 515 F.3d at 234.  Here, Plaintiffs have failed to allege facts that raise a reasonable expectation that discovery will reveal that their positions did not require a political affiliation or involve policymaking.  Therefore, the facts alleged in the Complaint are not sufficient to show that Plaintiffs have a plausible claim for relief on their First Amendment claims.  *See Fowler*, 578 F.3d at 211.  Accordingly, Defendants' Motion for Judgment on the Pleadings on the First Amendment claims will be granted.

## 2.   Due Process

Plaintiffs' Complaint alleges that "[t]he Defendants have also failed to grant the Plaintiffs their rights under the due process clause."  (Dkt. No. 1 at ¶ 43).  Plaintiffs provide no explanation of, or factual support for, this conclusory statement of law, which does not distinguish between procedural and substantive due process.  *See Liotta*, 985 F.2d at 123.  Mere conclusory statements of law in a plaintiff's complaint are not entitled to a presumption of truth.  *Iqbal*, 556 U.S. at 664.  Legal conclusions must instead be supported by factual allegations.  *Id.*  In the absence of any factual allegations supporting this conclusory statement, the Court finds that Plaintiffs have not stated a plausible Due Process claim.

In an examination of Due Process claims in the context of public employees of the Virgin Islands, the Third Circuit explained that "to establish a procedural due process claim, a plaintiff

14

must demonstrate that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of life, liberty, or property, and (2) the procedures available to him did not provide due process of law." *Iles*, 638 F.3d at 173 (citations and internal quotations omitted). Further, "[t]he question of whether an employee has a property right in continued employment is a question of state [or territorial] law." *Id.* (citations omitted). Thus, Virgin Islands law governs whether Plaintiffs have property rights in their positions with the Virgin Islands Government. *Id.*; *McIntosh-Luis v. DeJongh*, Civil Action No. 09-22, 2012 WL 1139746 at *4 (D.V.I. Mar. 30, 2012).

Virgin Islands law establishes three categories of public employees—exempt service, "regular" career service, and "not regular" career service. *Iles*, 638 F.3d at 173. A position is "exempt" when the Governor designates it as a position of a "policy-determining nature" and it is submitted to the Legislature. *Id.* Exempt employees can be terminated without cause, and have no property right in continued employment. *Id.* Non-exempt employees are considered "career service employees," *id.*, a category which is itself further divided into two subcategories: "regular" career service employees and "not regular" career service employees. *McIntosh-Luis*, 2012 WL 1139746 at *5.

Of the three categories of public employees, only those who meet the definition of "regular" career service employees enjoy Due Process protection. *Iles*, 638 F.3d at 174; *McIntosh-Luis*, 2012 WL 1139746 at *4. "Regular" government employees have a property right in continued employment and cannot be fired without cause. *Noorhasan v. de Jongh*, Civ. No. 11–cv–21, 2011 WL 1033704 at *2 (D.V.I. Mar. 21, 2011). Under an amended definition that became effective in early 2010, a "regular career service employee" means an employee who "has been appointed to a position in the classified or career service or served in a temporary

position for more than two years in a department or agency of the executive branch or in an instrumentality," and "who is not on contract, is not on probation, and therefore subject to dismissal, demotion or suspension, only for cause."  3 V.I.C. § 530(a)(2)(C).[6]

In this case, Plaintiffs' Complaint does not describe the nature of their appointments so as to plausibly show that they were not exempt employees but were instead "regular" career service employees entitled to Due Process protections.  Liburd's allegations that she has "never had to write a letter to any other governor" and that during her tenure she has "always been involved in program development and execution" do not show that she was a regular career service employee.  (Compl. at ¶¶ 18, 20, Dkt. No. 1).  To the contrary, the Complaint alleges that Plaintiff Liburd stated that "I have been an *exempt employee* for seventeen and [a] half years (17.5)."  (*Id.* at ¶¶ 18–19) (emphasis added).  Moreover, as alleged in the Complaint, the memorandum from Julius C. Wilson requesting the letters of resignation was directed to "all persons holding *exempt positions*."  (*Id.* at ¶ 10) (emphasis added).  Accordingly, the Complaint does not allege sufficient facts to plausibly show that Plaintiff Liburd was a non-exempt, "regular" career service employee.

As previously discussed, the factual allegations pertaining to Plaintiff Harley are few. The only allegations concerning Harley's employment prior to his termination are his job title and that he had a good work record during his employment.  (*See id.* at ¶¶ 35–36).  These

---

[6] As the Third Circuit has noted, the definition of "regular" employee was amended in January 2010.  *Iles*, 638 F.3d at 176; *see also* Jan. 27, 2010, No. 7144, § 1(a)(1)-(3), Sess. L. 2009, pp. 310, 31.  As the material facts giving rise to Plaintiffs' claims arose in November and December 2010, the Court is required to apply the amended definition of "regular" employee, which existed at the time Plaintiff's suit arose.  *Iles*, 638 F.3d at 177.

allegations fail to plausibly show that Harley was a regular career service employee.[7]

In their Opposition to Defendants' Motion for Judgment on the Pleadings, Plaintiffs argue that they are not exempt employees. (Dkt. No. 26 at 1–2). However, in ruling on a motion for judgment on the pleadings or motion to dismiss for failure to state a claim, courts do not consider arguments in an opposition brief as if such arguments were allegations made in the complaint. *See, e.g.*, *Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("It is one thing to set forth theories in a brief; it is quite another to make proper allegations in a complaint. . . .  [T]he legal theories set forth in Pennsylvania's brief are helpful only to the extent that they find support in the allegations set forth in the complaint. '[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.'") (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir.1984)).

Moreover, Plaintiffs' arguments rely only on conclusory statements in their Opposition: (1) "Although Liburd's Notice of Personnel Action (NOPA) classifies her as an exempt employee, Liburd does not hold the position of an exempt employee as defined by Title 3 §451a of the Virgin Islands Code;" and (2) "Although Harley's (NOPA) classified him as an exempt employee, Harley's position did not fall under the definition of exempt as prescribed by Title 3 §451a of the Virgin Islands Code." (*Id.*).  The assertion that Liburd and Harley are not exempt employees under 3 V.I.C. §451a is a legal conclusion unsupported by factual allegations in the Complaint.  On a motion for judgment on the pleadings or motion to dismiss for failure to state a claim, courts are not bound to accept as true mere legal conclusions that are couched as factual

---

[7] Even if Plaintiffs' complaint had alleged facts showing that they were in non-exempt career service positions, Plaintiffs would still need to allege facts showing that they meet the definition of "regular" career service employees.  *See Iles*, 638 F.3d at 175 ("[M]erely because a Virgin Islands public employee is part of the 'career service does not necessarily mean that he is also a 'regular' employee with a property interest entitled to due process protection.").

allegations.  *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555; *Papasan v. Allain*, 478 U.S. 265, 286 (1986).  Further, although Plaintiffs argue that they were non-exempt employees, they make no assertion—let alone plausibly show—that they were "regular" career service employees, which is the only category of public employees under Virgin Islands law to enjoy a property interest in continued government employment and thus Due Process protections.  *See Iles*, 638 F.3d at 174.  And again, none of these arguments are tied to, or otherwise correspond with, allegations in the Complaint.

In view of the foregoing, Plaintiffs have not demonstrated that they have a plausible claim for relief on their Due Process claims.  *Iles*, 638 F.3d at 173 (noting that a plaintiff must first demonstrate that he or she "was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of life, liberty, or property"); *McIntosh-Luis*, 2012 WL 1139746 at *6 (finding, in the summary judgment context, that "Plaintiff did not have a protected property interest in her position, and therefore, her Fourteenth Amendment due process claims must fail"); *see also Iqbal*, 556 U.S. at 679 ("where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief'") (quoting Fed. R. Civ. P. 8(a)(2)).  Accordingly, Defendants' Motion for Judgment on the Pleadings on the Due Process claims will be granted.

### 3.      Equal Protection

Plaintiffs' Complaint alleges that "[t]he Defendants have also failed to grant the Plaintiffs . . . their rights under the equal protection act."  (Dkt. No. 1 at ¶ 43).  Plaintiffs do not provide any further explanation of this claim beyond the foregoing conclusory sentence.  Nor does the Complaint provide any factual support for the Equal Protection claim.

Upon review of a motion to dismiss or motion for judgment on the pleadings, allegations that are merely conclusions are not entitled to an assumption of truth.  *See Iqbal*, 556 U.S. at 664. Legal conclusions can provide a complaint's framework, but they must be supported by factual allegations.  *Id.*  Here, Plaintiffs have provided no factual allegations that would support the legal conclusions that they were denied their Equal Protection rights.

In order to state a § 1983 claim under the Equal Protection Clause, plaintiffs must allege that a state actor intentionally discriminated against them because of their membership in a protected class.  *Lande v. City of Bethlehem*, 457 F. App'x 188, 192 (3d Cir. 2012) (citing *Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd. of Educ.*, 587 F.3d 176, 196 (3d Cir. 2009)); *see also Sanders*, 2009 WL 649888 at *2 (citing *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)) ("To state a claim for an equal protection violation a plaintiff must allege that the defendant(s) intentionally treated him or her differently from similarly situated individuals.").  Plaintiffs must also be mindful of the Third Circuit's admonition in *Fowler* that "[a]fter *Iqbal*, it is clear that conclusory or 'bare-bones' allegations will no longer survive a motion to dismiss: 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'"  *Fowler*, 578 F.3d at 210 (quoting *Iqbal*, 556 U.S. at 678).

In the instant case, Plaintiffs' Complaint lacks even the recitation of the elements of the cause of action, let alone factual support demonstrating that they have stated plausible claims for relief.  *See Olech*, 528 U.S. at 564; *Chambers*, 587 F.3d at 196;  *Lande*, 457 F. App'x at 192. Consequently, Plaintiffs have failed to state a claim under the Equal Protection Clause.  *Cf., e.g.*, *Liotta*, 985 F.2d at 122 (noting that the plaintiff's contention that defendants violated his Equal Protection rights "requires little discussion"—plaintiff "does not explain how the [defendants']

19

actions in terminating his employment possibly could have infringed his equal protection rights and thus, as we see no basis for the claim, we will not discuss it further").  Defendants' Motion for Judgment on the Pleadings on the Equal Protection claims will be granted.

## C.   The Common Law Claims

In addition to their constitutional and civil rights claims, Plaintiffs allege three common law claims under Virgin Islands law:  (1) breach of contract; (2) intentional infliction of emotional distress; and (3) negligent infliction of emotional distress.  (Dkt. No. 1 at ¶ 45–54). For the reasons that follow, Defendants' Motion for Judgment on the Pleadings will be granted as to each of the common law claims.

### 1.     Breach of Contract

According to the Complaint, Defendants' actions constitute a breach of contract (express and implied), by violating the policies and procedures set forth in the Rules and Regulations of the Virgin Islands Government Personnel Department.  (Compl. at ¶ 46, Dkt. No. 1).  Plaintiffs contend that these Rules and Regulations form the basis of an express and implied contract between Plaintiffs and Defendants, which "became a bilateral agreement between the parties, which constitutes a contract to be enforced by the Plaintiffs."  (*Id.*).  However, Plaintiffs make no specific factual allegations concerning which clauses or provisions of the alleged contract might have been violated.  (*See id.*).

To succeed on a breach of contract claim under Virgin Islands law, a plaintiff must prove four elements:  (1) an agreement; (2) a duty created by that agreement; (3) a breach of that duty; and (4) damages.  *Bank of Nova Scotia v. Ross*, Civ. No. 2010–118, 2012 WL 4854776 at *4 (D.V.I. Oct. 12, 2012).  Even assuming that the allegations are sufficient to plausibly state the existence of a contract, Plaintiffs have failed to allege specific facts supporting either (1) a duty

created by that agreement or (2) a breach of that duty.  Instead, Plaintiffs state only that "[t]he actions of Defendants are clearly a breach of those procedures and policies set forth in the Rules and Regulations of the V.I. Government Personnel Department."  (Compl. at ¶ 46, Dkt. No. 1). Plaintiffs have not alleged any particular duty owed them by Defendants under the alleged agreement, nor have Plaintiffs alleged how Defendants' actions breached this unspecified duty.

In short, Plaintiffs' breach-of-contract allegations amount to nothing more than the assertion that an agreement existed, and that Defendants breached unidentified terms of this contract.  (*See id.*).  As the Third Circuit has explained, district courts may disregard such bare legal conclusions.  *See Fowler*, 578 F.3d at 210–11.  Accordingly, Plaintiffs' breach of contract claim cannot survive Defendant's Motion for Judgment on the Pleadings.

### 2.    Intentional Infliction of Emotional Distress

Plaintiffs also allege that Defendants intentionally inflicted emotional distress upon them. (Dkt. No. 1 at ¶ 50–51).  Defendants contend that their actions do not rise to the level necessary to support a claim for intentional infliction of emotional distress. (Dkt. No. 21 at 7). The Court agrees.

In order to state a claim for intentional infliction of emotional distress, "the plaintiff must allege that the defendant engaged in extreme and outrageous conduct that intentionally or recklessly caused severe emotional distress." *Boyd-Richards*, 2012 WL 13682 at *6.  "Under Virgin Islands law, it is extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress." *Id.* (quoting *Speaks*, 2009 WL 167330, at *7) (internal quotation marks omitted).  Indeed, there is a "high bar to meet" in order to state an intentional infliction of emotional distress claim:

> [Intentional infliction of emotional distress] occurs when one who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another. In order to be liable for [intentional infliction of emotional distress], a defendant's conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society.

*Glasgow v. Veolia Water N. Am., Operating Servs., LLC*, Civ. No. 2009-019, 2010 WL 3780966 at *8, 2010 U.S. Dist. LEXIS 99570 *28–29 (D.V.I. Sept. 21, 2010) (internal quotation marks and citations omitted).

The Court finds that no allegations in Plaintiffs' Complaint plausibly show the existence of conduct that is so outrageous and extreme "as to go beyond all bounds of decency" and that should be "regarded as atrocious and utterly intolerable in civilized society." *See id.*, 2010 WL 3780966 at *9, 2010 U.S. Dist. LEXIS 99570 at *29–30 (finding, in the motion to dismiss context, that plaintiff's allegations of pervasive discrimination and employer's preferential treatment of Caucasian workers was not sufficiently outrageous to support intentional infliction of emotional distress claim). Accordingly, the Court will grant Defendant's Motion for Judgment on the Pleadings with respect to Plaintiffs' claims for intentional infliction of emotional distress.

### 3. Negligent Infliction of Emotional Distress

Finally, the Plaintiffs allege in their Complaint that Defendants negligently inflicted emotional distress upon them. (Dkt. No. 1 at ¶ 53–54). In the Virgin Islands, the tort of negligent infliction of emotional distress requires that: (1) the plaintiff was in danger of his or her own safety; (2) the plaintiff suffered some physical harm; and (3) the physical harm was a result of the emotional distress. *McCauley*, 618 F.3d at 250 n.13; *Veolia Water*, 2010 WL 3780966 at *9 n.14; *see also Fenton v. C & C Constr. & Maint., Inc.*, 48 V.I. 263, 276 (V.I. Super. Ct. 2007) ("Two elements are required to sustain a claim of negligent infliction of

emotional distress.  First, the negligent conduct must have placed the plaintiff in danger of his or her own safety.  Second, the plaintiff must have suffered some physical harm as a result of the emotional distress.").

Here, Plaintiffs do not allege the elements of a claim for negligent infliction of emotional distress.  Plaintiffs' allegations relevant to this count are limited to conclusory statements of law: "Defendants' actions ha[ve] affected them to such an extent that it appears that the Defendants[] negligently inflicted harm upon the Plaintiffs and that such actions have caused harm to Plaintiffs," and "Plaintiffs have suffered emotional distress and harm to their detriment which in turn has caused Plaintiffs economic loss and pecuniary injury."  (Compl. at ¶ 53–54, Dkt. No. 1). Without supporting factual allegations in the Complaint, district courts may disregard such bare legal conclusions.  *See Fowler*, 578 F.3d at 210–11.  Therefore, the Court will grant Defendants' Motion for Judgment on the Pleadings with respect to Plaintiffs' claims for negligent infliction of emotional distress.  *See id.*

## IV.   LEAVE TO AMEND

Having concluded that Plaintiffs did not sufficiently plead their claims, the Court considers whether to grant Plaintiffs leave to amend their Complaint.  Plaintiffs have not requested leave to amend their Complaint.  Rather, in their Opposition to Defendants' Motion for Judgment on the Pleadings, Plaintiffs request only that Defendants' Motion be denied.  (Dkt. No. 26 at 11).

In determining whether leave to amend should be granted *sua sponte*, the Third Circuit has noted a distinction between civil rights cases, such as the instant case, and non-civil rights cases.  *See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007).  In civil rights cases, the Third Circuit has noted that although "[t]he Federal Rules of

Civil Procedure do not address the situation in which a deficiency in a complaint could be cured by amendment but leave to amend is not sought[,] [c]ircuit case law . . . holds that leave to amend must be given in this situation as well." *Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir. 2000).[8]

In *Shane*, the Third Circuit explained that "after an answer has been filed, the plaintiff may amend [the complaint] only with leave of court or the written consent of the opposing party, but 'leave shall be freely given when justice so requires.'" *Id*. at 115 (quoting Fed. R. Civ. P. 15(a)). The court further noted that "[a]mong the grounds that could justify a denial of leave to amend are undue delay, bad faith, dilatory motive, prejudice, and futility." *Id.* (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997)). Similarly, the Third Circuit has stated that "if a complaint is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile." *Phillips*, 515 F.3d at 236 (citing *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002)).

Here, the Court finds that Defendants have not shown undue delay, bad faith, or dilatory motive on behalf of Plaintiffs. *See Shane*, 213 F.3d at 115. The Court further finds that Defendants have failed to show that allowing Plaintiffs to amend their Complaint would prejudice Defendants. *See id.* Further, on the submissions currently before the Court, the Court does not find that such amendment would be inequitable or futile. *See Phillips*, 515 F.3d at 236.

In view of the foregoing, the Court will grant Plaintiffs leave to amend their Complaint—

---

[8] In contrast, the Third Circuit has "rarely applied the *sua sponte* amendment rule outside of the context of a civil rights case." *Fletcher-Harlee*, 482 F.3d at 252. "In non-civil rights cases, the settled rule is that properly requesting leave to amend a complaint requires submitting a draft amended complaint." *Id.* at 252–53. In those cases, failure to submit a draft amended complaint has been held to be fatal to motions for leave to amend. *Id.* While this case also involves non-civil rights claims, the Court does not consider it inequitable to permit Plaintiffs the opportunity to amend all of their claims, if they so choose and have a factual basis for so doing.

if they so choose and have a factual basis for so doing—to attempt to cure the pleading deficiencies identified in this Memorandum Opinion.  However, Plaintiffs will not be permitted to allege any new claims in an Amended Complaint.  Further, Plaintiffs are cautioned that the Court will not look favorably upon additional factual allegations that are beyond the scope of the already-completed discovery in this case, given that the deadline for the completion of all factual discovery in this case was November 14, 2011.  (*See* Dkt. No. 13 at 1).  Defendants will be permitted to respond to the Amended Complaint in accordance with the applicable Rules of Civil Procedure.

## V.   CONCLUSION

For the reasons stated above, Defendants' Motion for Judgment on the Pleadings (Dkt. No. 20) is granted.  Plaintiffs are granted leave to amend their Complaint—if they so choose and have a factual basis for so doing—to attempt to cure the pleading defects identified in this Memorandum Opinion, and Defendants will be permitted to respond in accordance with the applicable Rules of Civil Procedure.

An appropriate Order accompanies this Memorandum Opinion.


Date:  March 13, 2013                            _____/s/_____
                                                 WILMA A. LEWIS
                                                 District Judge